UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

LUANN THOMAS, : 
        Plaintiff, :
 :
    v. : No. 5:21-cv-03288
 :
BRANDYWINE HOSPITAL, LLC and :
TOWER HEALTH, :
        Defendants. :
_____

**O P I N I O N**
**Defendants' Motions to Dismiss, ECF No. 9 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                                                **December 14, 2021**
**United States District Judge**

## I.    INTRODUCTION

This matter involves employment law claims by Plaintiff Luann Thomas against her former employers, Defendants Brandywine Hospital, LLC and Tower Health. Thomas asserts that her termination violated the Americans with Disabilities Act (ADA) insofar it was based on her disabilities. In addition, Thomas alleges that her termination violated the Family and Medical Leave Act (FMLA). In response to Thomas' Complaint, Defendants filed the instant Motion to Dismiss.

Following a review of the motion and the allegations in the Complaint, this Court grants Defendants' motion to dismiss in part and denies it in part. Thomas' claims for (1) discrimination under the ADA, (2) retaliation under the ADA, (3) hostile work environment under the ADA, and (4) interference under the FMLA are dismissed without prejudice. Thomas' claim for retaliation under the FMLA may proceed as pleaded.

## II.    BACKGROUND[1]

Thomas was employed by Defendants from October 2018 until approximately February 17, 2021.  *See* Compl. ¶ 14.  She was employed as an "Emergency Room Technician."  *See id.* ¶ 15.  During her employment, Thomas suffered from bi-polar disorder and anxiety.  *See id.* ¶ 18.  Defendants were aware that Thomas suffered from these conditions.  *See id.*

In or about October of 2020, Thomas was admitted to the hospital for tachycardia.  *See id.* ¶ 20.  Thomas requested and was approved for FMLA leave from October 3, 2020 until October 13, 2020.  *See id.*  Thomas returned to work on October 13, 2020.  *See id.* ¶ 21.  After returning to work, Thomas was informed that her direct supervisor, Debora Rose, and the Human Resources Business Partner, Dina Criniti, had a "reasonable suspicion" that Thomas was using illegal or non-prescribed narcotics.  *See id.*  Based on this suspicion, Thomas was removed from the schedule and placed on medical leave from October 14, 2020 until October 31, 2020.  *See id.* ¶¶ 21-22.

Thomas underwent a drug screen and provided Defendants a list of her medications.  *See id.* ¶ 24.  Defendants also required that Thomas be cleared by a psychiatrist and a cardiologist before returning to work.  *See id.*  Thomas' drug screen was negative for any illegal narcotics or non-prescribed medications, and she returned to work on or about November 3, 2020.  *See id.* ¶ 25.  Thomas alleges that Rose continued to scrutinize Thomas' work and monitor her every move.  *See id.* ¶ 26.  On February 11, 2021, Rose accused Thomas of slurring her words and falling asleep while on break.  *See id.* ¶ 28.  As a result, Thomas was again required to undergo a drug test.  *See id.* ¶ 29.

---

[1]    The background is taken, in large part, from the allegations in Thomas' Complaint.  *See* Compl., ECF No. 1.

On February 15, 2021, Thomas' drug screen was again negative for illegal narcotics or non-prescribed medication. *See id.* ¶ 30. On February 17, 2021, Thomas was contacted by the Human Resources Director, who told Thomas that she was terminated. *See id.* ¶ 31. Thomas alleges that the reasons stated for her termination included her incapacity to do her job and use of profanity. *See id.*

### III.     LEGAL STANDARDS

####     A.     Motion to Dismiss – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The defendant bears the burden of demonstrating that a

plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B. Discrimination under the ADA – Review of applicable Law

"No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A). To state a prima facie case of discrimination under the ADA,[2] a plaintiff must also show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *See Stouch v. Township of Irvington*, 354 F. App'x 660, 666 (3d Cir. 2009)

---

[2] The ADA and PHRA "are 'interpreted consistently' with one another, and each 'ha[s] the same standard for the determination of liability.'" *See Dreibelbis v. County of Berks*, 438 F. Supp. 3d 304, 314 (E.D. Pa. 2020) (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012)). Accordingly, to the extent Thomas' also brings these claims under the PHRA, this Court analyzes both claims under the same framework.

(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). "The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination." *See id.*

The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "The determination of whether an individual is substantially limited in a major life activity must be made 'on a case-by-case basis.'" *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)).

Claims of discrimination under the ADA are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*. *See Cassidy v. Halyard Health, Inc.*, 319 F. Supp. 3d 474, 480 (E.D. Pa. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, a plaintiff

> must first establish a prima facie case of disability discrimination by showing that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination."

*See id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Once a plaintiff makes out a prima facie case, "the burden shifts to [d]efendant to articulate a non-discriminatory reason for the action, and if it does so, the burden shifts back to [p]laintiff to show that the reason was a pretext for discrimination." *See id.*

C.	**Retaliation under the ADA – Review of Applicable Law**

"To establish a prima facie case of retaliation, [a plaintiff] must demonstrate that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action and (3) there was a causal connection between the protected activity and the adverse employment action." *See Connearney v. Main Line Hosps., Inc.*, Civ. A. No. 15-02730, 2016 WL 6440371, at *10 (E.D. Pa. Oct. 28, 2016) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). "Requesting an accommodation is a protected employee activity under the ADA." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)). "[A] request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA . . . ." *See Beishl v. County of Bucks*, Civ. A. No. 18-2835, 2018 WL 6812132, at *4 (E.D. Pa. Dec. 27, 2018) (quoting *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156 (3d Cir. 2017)).  In particular, "[a] request for FMLA leave may serve as a request for reasonable accommodation where the employer knows or has reason to believe 'that the request was based on something other than a one-time event.'"  *See id.* (indicating "a prospective request for *periodic* FMLA leave" may qualify as a reasonable accommodation (emphasis added) (quoting *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 631 (E.D. Pa. 2017))).

In determining whether a causal connection exists between protected activity and an adverse employment action, courts "focus on two factors: (1) the 'temporal proximity' between the protected activity and the alleged discrimination and (2) the existence of 'a pattern of antagonism in the intervening period.'" *See Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006). "Timing alone raises the requisite inference when it is 'unusually suggestive of retaliatory motive . . . .'"  *See id.* (quoting *Krouse*, 136 F.3d at 503-04).  However, where temporal

proximity is absent, "courts may look to the intervening period for other evidence of retaliatory animus." *See id.* (quoting *Krouse*, 136 F.3d at 503-04).

      **D.**      **Hostile Work Environment under the ADA – Review of Applicable Law**

To state a claim that one was subjected to a hostile work environment under the ADA, a plaintiff must sufficiently allege that:

(1) "the employee suffered intentional discrimination because of his/her [protected characteristic];"

(2) "the discrimination was severe or pervasive;"

(3) "the discrimination detrimentally affected the plaintiff;"

(4) "the discrimination would detrimentally affect a reasonable person in like circumstances;" and

(5) "the existence of *respondeat superior* liability."

*See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)).

In determining whether conduct is severe or pervasive, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *See id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, (1993)).

      **E.**      **Interference with Leave under the FMLA – Review of Applicable Law**

In order to state a claim for interference under the FMLA, a plaintiff must allege:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to

>take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*See Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)).

Title 29 C.F.R. § 825.220(b) defines interference to include not only outright denials of leave, but "discouraging an employee from using such leave." *See* 29 C.F.R. § 825.220(b). Notwithstanding, "[t]he Third Circuit has unequivocally stated that 'for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld.'" *See Shann v. Atlantic Health Sys.*, Civ. A. No. 12-4822 (ES) (MAH), 2017 WL 5260780, at *19 (D.N.J. Nov. 13, 2017) (quoting *Ross*, 755 F.3d at 191-92). Accordingly, in order to make out a claim for interference based on discouragement, a plaintiff must allege that the discouragement "occur[red] in tandem with actual harm." *See id.* (quoting *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 246 (3d Cir. 2016)).

### F.     Retaliation under the FMLA – Review of Applicable Law

"Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012). Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . ." *See id.* (citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004)).

"Under the *McDonnell Douglas* framework, [a plaintiff] has the initial burden of establishing a prima facie case." *See id.* To state a claim for retaliation under the FMLA a plaintiff must allege "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation

of rights." *See id.* (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009)). "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality . . . .'" *See id.* (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). However, where temporal proximity is absent, "courts may look to the intervening period for other evidence of retaliatory animus." *See Jensen*, 435 F.3d at 450 (quoting *Krouse*, 136 F.3d at 503-04).

IV.     **ANALYSIS**

In her Complaint, Thomas raises claims under both the ADA and FMLA. Under the ADA, Thomas raises claims for disability-based discrimination, retaliation, and hostile work environment. For the reasons set forth below, all three of Thomas' ADA claims are dismissed without prejudice. Under the FMLA, Thomas brings a claim of interference with FMLA leave and a claim of retaliation for taking FMLA leave. For the reasons explained below, Thomas' FMLA interference claim is dismissed without prejudice. Notwithstanding, Thomas has sufficiently pleaded a claim for retaliation under the FMLA, and that claim may proceed as pleaded.

    A.     **Thomas' ADA Claims**

        1.     **Claim of Discrimination on the Basis of Disability**

In order to state a claim for discrimination under the ADA, Thomas must sufficiently allege (1) that she is a qualified individual with a disability, and (2) that she suffered an adverse employment action as a result of discrimination. *See Cassidy*, 319 F. Supp. 3d at 480 (quoting *Taylor*, 184 F.3d at 306). Even assuming *arguendo* that Thomas is a qualified individual with a

disability, she has failed to sufficiently allege that her termination was the result of disability-based discrimination. Accordingly, Thomas' ADA discrimination claim is dismissed.

In her response to Defendants' motion to dismiss, Thomas argues that "[e]vidence that a plaintiff was subjected to negative treatment and/or terminated shortly after disclosing her medical conditions is sufficient to raise a plausible inference of discrimination." *See* Resp. 9 (collecting cases). While this Court does not dispute this proposition, Thomas' allegations fail to establish such a temporal connection in this case. Thomas alleges that she informed Defendants of her medical condition. *See* Compl. ¶ 18. However, Thomas does not allege *when* this information was conveyed to Defendants. Thomas alleges that she had her claimed disabilities "[a]t all relevant times during her employment with Defendants," yet she does not indicate at what point Defendants were made aware of these conditions. *See id.* In the absence of any allegations that would indicate any negative treatment occurred "shortly after disclosing" her disability, Thomas has failed to plausibly allege a temporal proximity sufficient to permit an inference that her treatment by Defendants was because of her disability.

Thomas also fails to allege facts that would otherwise link the treatment she experienced to her disabilities. Even if Thomas' allegations regarding her treatment are taken as true, Thomas does not connect that conduct in any way to her disability. Thomas' conclusory allegation that she was subjected to "disparate treatment as a result of her health conditions" does not carry her burden at this stage of the proceedings. Accordingly, Thomas' ADA discrimination claim is dismissed without prejudice.

### 2. Claim of Retaliation under the ADA

Thomas next claims that she was retaliated against for engaging in protected activity in violation of the ADA. In order to state a claim for retaliation under the ADA, Thomas must

allege (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and adverse action. *Connearney*, 2016 WL 6440371, at *10 (citing *Krouse*, 126 F.3d at 500).

Beginning with the protected activity requirement, Thomas asserts that her request for FMLA leave constituted a request for a reasonable accommodation, and therefore, her FMLA leave request represents engagement in protected activity. *See* Resp. 12-14. Defendants dispute this assertion, arguing that a request for FMLA leave in this instance does not constitute a request for reasonable accommodation. *See* Reply 5-7. A request for FMLA leave may be considered a request for a reasonable accommodation where the employer knows, or has reason to know, that the request is not based on a one-time event. *See Beishl*, 2018 WL 6812132, at *4 (citing *Isley*, 275 F. Supp. 3d at 631). Thomas fails to allege that Defendants knew, or had reason to know, that her request for leave was based on more than just a one-time event.

Thomas alleges only one request for FMLA leave in the entirety of her Complaint. That period of leave occurred from October 3, 2020 to October 13, 2020. *See* Compl. ¶ 20. Moreover, based squarely on the allegations in the Complaint, Thomas' lone request for FMLA leave was based on her hospitalizations for Tachycardia in October of 2020. The Complaint lacks allegations that would impute knowledge to Defendants that this leave was periodic. Importantly, Thomas does not indicate in the Complaint whether she ever requested FMLA leave prior to October of 2020 or whether she was in need of further periods of leave beyond October. Based on the allegations, Defendants would have no way of knowing that this leave was anything other than a one-time event. Accordingly, Thomas' request for FMLA leave does not qualify as a request for a reasonable accommodation.

Since Thomas' request for FMLA leave does not qualify as a reasonable accommodation under the facts alleged, Thomas has failed to set forth any engagement in protected activity that would give rise to a claim of retaliation under the ADA. Therefore, Thomas' ADA retaliation claim is dismissed without prejudice.

### 3. Claim of Hostile Work Environment under the ADA

Thomas next claims that she was subjected to a hostile work environment under the ADA. In order to set forth a claim of this type, Thomas must allege (1) she suffered intentional discrimination because of her disability, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected her, (4) the discrimination would have a detrimental effect on a reasonable person in similar circumstances, and (5) respondeat superior liability. *See Mandel*, 706 F.3d at 167 (citing *Jensen*, 435 F.3d at 449).

Thomas' hostile work environment claim fails at the first element, as Thomas has not sufficiently pleaded that she suffered intentional discrimination on the basis of her disability. Thomas' alleges five actions that she claims contributed to a hostile work environment: (1) Thomas alleges that she was asked to undergo a drug test upon her return from FMLA leave, (2) Thomas alleges that she was placed on suspension pending the results of that test and other medical examinations, (3) Thomas alleges that Criniti blocked her vehicle from leaving the workplace, (4) Thomas alleges that her supervisor, Rose, scrutinized her work, and (5) Thomas alleges that she had to undergo a second test months after her FMLA leave.

Viewed as a whole, these allegations suffer from the same fatal defect: Thomas' fails to draw any connection between these alleged acts and Thomas' claimed disabilities. Although allegations comprising a hostile work environment claim are generally to be viewed collectively, an action-by-action review of Thomas' allegations illustrates the lacking connection.

Turning to the first allegedly hostile action, the first drug test, Thomas fails to connect this action to her disabilities such that it could plausibly be discrimination on that basis.  Thomas does not plead any temporal connection between the drug test and her disclosure of her disability, nor does she plead any facts that would otherwise connect the two.

With respect the second action, Thomas' placement on leave, Thomas again fails to draw a connection between her disability and the allegedly hostile action.  Rather, Thomas' own allegations tie the leave directly to the drug test, which she alleges Defendants required due to a "reasonable suspicion" of drug use.

With respect to the third action, Criniti blocking Thomas' vehicle, Thomas fails to draw any connection between this action and her claimed disabilities.  Thomas' Complaint does not provide any context for this action, and accordingly, it lacks any facts that would permit an inference that this conduct had anything to do with Thomas' disability.

With respect to the fourth action, the comments made by Rose, Thomas again fails to connect this action to her claimed disabilities.  Thomas' Complaint does not set forth the contents of any of these comments such that this Court could draw an inference that they are the product of disability-based discrimination.  Rather, Thomas' own allegations indicate that these comments related generally to "Plaintiff's work."  *See* Compl. ¶ 26.  While it is true that comments involving one's work may also represent discriminatory remarks, Thomas' Complaint provides no allegations to plausibly suggest that such discrimination occurred here.

Finally, with respect to the fifth action, the second drug test, Thomas similarly fails to draw any connection between the drug test and her disability.  Again, Thomas' allegations indicate that she was informed the drug test was being required because she was "slurring her words" and "falling asleep while on break."  *See id.* ¶ 28.

Even when these events are viewed together, Thomas fails to connect these alleged actions to her claimed disabilities.  Put another way, Thomas does not plausibly allege that she was subjected to intentional discrimination on the basis of her disability sufficient to sustain a hostile work environment claim under the ADA.  Accordingly, Thomas' ADA hostile work environment claim is dismissed without prejudice.

      **B.**      **Thomas' FMLA Claims**

            **1.**      **Claim of Interference with FMLA Leave**

Thomas next claims that Defendants interfered with her rights under the FMLA to take leave for which she was qualified.  In order to state such a claim, Thomas must allege (1) her eligibility under the FMLA, (2) that Defendants are covered by the FMLA, (3) that Thomas was entitled to leave, (4) that Thomas notified Defendants of her intent to take leave, and (5) a denial of benefits to which Thomas was entitled under the FMLA.  *Ross*, 755 F.3d at 191-92 (citing *Johnson*, 566 F. Supp. 2d at 446).  When a plaintiff claims that she was discouraged from taking leave, that plaintiff must show that the discouragement occurred in tandem with some actual harm.  *See Shann*, 2017 WL 5260780, at *19 (citing *Fraternal Order of Police, Lodge 1*, 842 F.3d at 246)

Here, assuming *arguendo* that Thomas satisfies the first four elements of the test, she fails to satisfy the fifth element.  Thomas alleges that she informed Defendants of her intent to take leave from October 3, 2020 to October 13, 2020.  *See* Compl. ¶ 20.  Thomas also alleges that she took that leave.  *See id.*  It is Thomas' position that the actions taken by Defendants—which include the drug tests, actions of Criniti, and comments by Rose—constitute discouragement from taking future FMLA leave.  *See* Resp. 25.  Although the law recognizes discouragement claims, the Third Circuit requires that the discouragement take place in tandem

with some actual harm. *See Shann*, 2017 WL 5260780, at *19 (citing *Fraternal Order of Police, Lodge 1*, 842 F.3d at 246). Here, Thomas fails to allege any actual harm resulting from the alleged discouragement. Importantly, Thomas fails to allege any prospective FMLA leave that she planned to take following the October 2020 leave, let alone that she was discouraged from taking that future leave due to the actions of Defendants. Accordingly, in the absence of any allegations of actual harm, Thomas has failed to state a claim for discouragement-type interference under the FMLA. Therefore, Thomas' FMLA interference claim is dismissed without prejudice.

### 2. Claim of Retaliation for Use of FMLA Leave

In order to state a claim for retaliation under the FMLA, Thomas must allege (1) that she invoked her right to FMLA leave, (2) that she suffered an adverse employment decision, and (3) a causal link between the two. *See Lichtenstein*, 691 F.3d at 301-02 (citing *Erdman*, 582 F.3d at 508). Here, Thomas has alleged facts sufficient to sustain a claim of FMLA retaliation against Defendants.

First, Thomas alleges that she invoked her right to FMLA leave. In particular, she alleges that she took FMLA leave from October 3, 2020 to October 13, 2020. *See* Compl. ¶ 20. Second, Thomas alleges that she suffered at least one adverse employment action following that period of leave. Specifically, Thomas alleges that she was removed from the schedule at work and suspended pending investigation. *See id.* ¶ 21. Both the removal and suspension constitute adverse actions that strike at Thomas' status as an employee. *See Shann*, 2017 WL 5260780, at *21 (citing *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014)). Finally, Thomas alleges a temporal proximity between her FMLA leave and the adverse action that is suggestive of causation. Thomas alleges that "immediately upon arriving at work" following her

return from FMLA leave, she was removed from the schedule, placed on suspension, and required to undergo drug testing. Thomas alleges that this suspension began just one day after she returned from leave, October 14, 2020, and lasted until October 31, 2020. The immediate temporal proximity between Thomas' return from FMLA leave and these adverse employment actions is sufficient at this stage to raise an inference of causation.

Accordingly, Thomas has sufficiently pleaded a claim for FMLA retaliation, and Defendants' motion to dismiss that claim is denied.

## V. CONCLUSION

Following a review of Thomas' Complaint, she fails to set forth the following claims:

(1) Disability-based discrimination under the ADA;

(2) Retaliation under the ADA;

(3) Hostile work environment under the ADA; and

(4) Interference with FMLA rights.

Accordingly, Defendants' motion to dismiss these claims is granted. Thomas does, however, set forth a viable claim of FMLA retaliation, and Defendants' motion to dismiss that claim is denied.

Because this Court cannot say for certain at this time whether amendment would be inequitable or futile, it must permit Thomas the opportunity to amend her Complaint. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Accordingly, Thomas is granted leave to amend her Complaint as to those claims dismissed without prejudice.

Any amendment must be made in compliance with the time frame set forth in the Order attached to this Opinion.

    A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge