UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

LUANN THOMAS,                           :
        Plaintiff,                     :
                                        :
        v.                             :   No. 5:21-cv-03288
                                        :
BRANDYWINE HOSPITAL, LLC and            :
TOWER HEALTH,                           :
        Defendants.                    :
_____

**O P I N I O N**
**Defendants' Motions to Dismiss, ECF No. 16 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                **February 18, 2022**
**United States District Judge**

I.    **INTRODUCTION**

This matter involves employment law claims by Plaintiff Luann Thomas against her former employers, Defendants Brandywine Hospital, LLC and Tower Health. Thomas asserts that her termination violated the Americans with Disabilities Act (ADA) insofar it was based on her disabilities. In addition, Thomas alleges that her termination violated the Family and Medical Leave Act (FMLA). Following Defendants' first motion to dismiss, Thomas filed an Amended Complaint. Defendants now move to dismiss the Amended Complaint in its entirety.

Following a review of the motion and the allegations in the Amended Complaint, this Court grants Defendants' motion to dismiss in part and denies it in part. Thomas' claims for ADA discrimination, ADA retaliation, hostile work environment, and FMLA retaliation may proceed as pleaded. Thomas' claim for FMLA interference is dismissed with prejudice.

**II.    BACKGROUND[1]**

Thomas was employed by Defendants from October 2018 until approximately February 17, 2021.  *See* Am. Compl. ¶ 14, ECF No. 14.  From October 2018 to April 2020, she was employed as a phlebotomist.  *See id.* ¶ 15.  From April 2020, Thomas was employed as an Emergency Room Technician.  *See id.* ¶ 17.  During her employment, Thomas suffered from bi-polar disorder and anxiety.  *See id.* ¶ 22.  Thomas informed Debra Rose, Director of Emergency and Thomas' supervisor, and Human Resources Associates Dina Criniti and Rebecca Parks of her medical conditions in or about October of 2020.  *See id.* ¶ 23.

Around that same time, Thomas was admitted to the hospital for tachycardia.  *See id.* ¶ 25.  Thomas requested and was approved for FMLA leave from October 3, 2020 until October 13, 2020.  *See id.*  Thomas returned to work on October 13, 2020.  *See id.* ¶ 30.  Upon returning to work, Thomas was informed that Rose and Criniti had a "reasonable suspicion" that Thomas was using illegal or non-prescribed narcotics.  *See id.*  Based on this suspicion, Thomas was removed from the schedule and placed on medical leave from October 14, 2020 until October 31, 2020.  *See id.* ¶¶ 30, 32.

Thomas underwent a drug screen and provided Defendants a list of her medications.  *See id.* ¶¶ 33-34.  Defendants also required that Thomas be cleared by a psychiatrist and a cardiologist before returning to work.  *See id.*  Thomas' drug screen was negative for any illegal narcotics or non-prescribed medications, and she returned to work on or about November 3, 2020.  *See id.* ¶ 34.  Thomas alleges that Rose continued to scrutinize Thomas' work, monitor her every move, and make comments regarding her conditions.  *See id.* ¶¶ 38-43.  On February

---

[1]    The background is taken, in large part, from the allegations in Thomas' Complaint.  *See* Compl., ECF No. 1.

11, 2021, Rose accused Thomas of slurring her words and falling asleep while on break. *See id.* ¶ 48. As a result, Thomas was again required to undergo a drug test. *See id.* ¶ 50.

On February 15, 2021, Thomas' drug screen was again negative for illegal narcotics or non-prescribed medication. *See id.* ¶ 51. On February 17, 2021, Thomas was contacted by the Human Resources Director, who told Thomas that she was terminated. *See id.* ¶ 52. Thomas alleges that the reasons Defendants provided for her termination included her incapacity to do her job and use of profanity. *See id.* Thomas alleges that these bases are untrue. *See id.*

Thomas filed the instant matter on July 23, 2021, alleging claims under both the ADA and FMLA against Defendants. *See* Compl., ECF No. 1. In an Opinion and Order dated December 14, 2021, this Court partially granted Defendants' motion to dismiss Thomas' Original Complaint. *See* Op. 12/14/21, ECF No. 12; Order 12/14/21, ECF No. 13. Thereafter, Thomas filed an Amended Complaint. *See* Am. Compl., ECF No. 14. Therein, she alleges claims for ADA discrimination, ADA retaliation, hostile work environment, FMLA interference, and FMLA retaliation. *See id.* Defendants now move to dismiss the entirety of Thomas' Amended Complaint. *See* Mot., ECF No. 16. Following a series of responses and replies, the motion is ready for review. *See* Resp., ECF No. 17; Reply, ECF No. 18.

III.   **LEGAL STANDARDS**

    A.   **Motion to Dismiss – Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff

stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      B.      **Discrimination under the ADA – Review of Applicable Law**

"No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). An "employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 12111(5)(A). To state a prima facie case

of discrimination under the ADA,[2] a plaintiff must also show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).  "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." *See Stouch v. Township of Irvington*, 354 F. App'x 660, 666 (3d Cir. 2009) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).  "The plaintiff then bears the burden of establishing that this proffered reason is a pretext for discrimination." *See id.*

The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment."  42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "The determination of whether an individual is substantially limited in a major life activity must be made 'on a case-by-case basis.'" *Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 167 (3d Cir. 2015) (quoting *Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)).

---

[2]   The ADA and PHRA "are 'interpreted consistently' with one another, and each 'ha[s] the same standard for the determination of liability.'" *See Dreibelbis v. County of Berks*, 438 F. Supp. 3d 304, 314 (E.D. Pa. 2020) (quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012)).  Accordingly, to the extent Thomas' also brings these claims under the PHRA, this Court analyzes both claims under the same framework.

Claims of discrimination under the ADA are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*. *See Cassidy v. Halyard Health, Inc.*, 319 F. Supp. 3d 474, 480 (E.D. Pa. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under this framework, a plaintiff

> must first establish a prima facie case of disability discrimination by showing that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination."

*See id.* (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Once a plaintiff makes out a prima facie case, "the burden shifts to [d]efendant to articulate a non-discriminatory reason for the action, and if it does so, the burden shifts back to [p]laintiff to show that the reason was a pretext for discrimination." *See id.*

C.   **Retaliation under the ADA – Review of Applicable Law**

"To establish a prima facie case of retaliation, [a plaintiff] must demonstrate that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action and (3) there was a causal connection between the protected activity and the adverse employment action." *See Connearney v. Main Line Hosps., Inc.*, Civ. A. No. 15-02730, 2016 WL 6440371, at *10 (E.D. Pa. Oct. 28, 2016) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). "Requesting an accommodation is a protected employee activity under the ADA." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003)). "[A] request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA . . . ." *See Beishl v. County of Bucks*, Civ. A. No. 18-2835, 2018 WL 6812132, at *4 (E.D. Pa. Dec. 27, 2018) (quoting *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 156 (3d Cir. 2017)). In particular, "[a] request for FMLA leave may serve as a request for reasonable accommodation

where the employer knows or has reason to believe 'that the request was based on something other than a one-time event.'" *See id.* (indicating "a prospective request for *periodic* FMLA leave" may qualify as a reasonable accommodation (emphasis added) (quoting *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 631 (E.D. Pa. 2017))).

In determining whether a causal connection exists between protected activity and an adverse employment action, courts "focus on two factors: (1) the 'temporal proximity' between the protected activity and the alleged discrimination and (2) the existence of 'a pattern of antagonism in the intervening period.'" *See Jensen v. Potter*, 435 F.3d 444, 450 (3d Cir. 2006). "Timing alone raises the requisite inference when it is 'unusually suggestive of retaliatory motive . . . .'" *See id.* (quoting *Krouse*, 136 F.3d at 503-04). However, where temporal proximity is absent, "courts may look to the intervening period for other evidence of retaliatory animus." *See id.* (quoting *Krouse*, 136 F.3d at 503-04).

D. **Hostile Work Environment under the ADA – Review of Applicable Law**

To state a claim that one was subjected to a hostile work environment under the ADA, a plaintiff must sufficiently allege that:

(1) "the employee suffered intentional discrimination because of his/her [protected characteristic];"

(2) "the discrimination was severe or pervasive;"

(3) "the discrimination detrimentally affected the plaintiff;"

(4) "the discrimination would detrimentally affect a reasonable person in like circumstances;" and

(5) "the existence of *respondeat superior* liability."

*See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)).

In determining whether conduct is severe or pervasive, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *See id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, (1993)).

  E.  **Interference with Leave under the FMLA – Review of Applicable Law**

In order to state a claim for interference under the FMLA, a plaintiff must allege:

> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*See Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)).

Title 29 C.F.R. § 825.220(b) defines interference to include not only outright denials of leave, but "discouraging an employee from using such leave." *See* 29 C.F.R. § 825.220(b). Notwithstanding, "[t]he Third Circuit has unequivocally stated that 'for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld.'" *See Shann v. Atlantic Health Sys.*, Civ. A. No. 12-4822 (ES) (MAH), 2017 WL 5260780, at *19 (D.N.J. Nov. 13, 2017) (quoting *Ross*, 755 F.3d at 191-92). Accordingly, in order to make out a claim for interference based on discouragement, a plaintiff must allege that the discouragement "occur[red] in tandem with actual harm." *See id.* (quoting *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 246 (3d Cir. 2016)).

F.     **Retaliation under the FMLA – Review of Applicable Law**

"Because FMLA retaliation claims require proof of the employer's retaliatory intent, courts have assessed these claims through the lens of employment discrimination law." *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012). Accordingly, claims based on circumstantial evidence have been assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . ." *See id.* (citing *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 147 (3d Cir. 2004)).

"Under the *McDonnell Douglas* framework, [a plaintiff] has the initial burden of establishing a prima facie case." *See id.* To state a claim for retaliation under the FMLA a plaintiff must allege "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *See id.* (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009)). "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality . . . .'" *See id.* (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). However, where temporal proximity is absent, "courts may look to the intervening period for other evidence of retaliatory animus." *See Jensen*, 435 F.3d at 450 (quoting *Krouse*, 136 F.3d at 503-04).

IV.    **ANALYSIS**

Thomas brings claims under both the ADA and FMLA. With respect to the ADA, Thomas claims that Defendants discriminated against her on the basis of her disability, retaliated against her for the same, and maintained a hostile work environment. With respect to the

FMLA, Thomas claims that Defendants interfered with her right to take FMLA leave and retaliated against her for the FMLA leave that she did take.

After a review of the Amended Complaint, this Court concludes that Thomas has sufficiently pleaded claims of ADA discrimination, ADA retaliation, hostile work environment, and FMLA retaliation. Accordingly, those claims may proceed as pleaded, and Defendants' motion to dismiss those claims is denied. Notwithstanding, Thomas fails to plead a sufficient claim of FMLA interference. Accordingly, that claim is dismissed with prejudice.

    **A.**    **Thomas' ADA Claims**

        **1.**    **Claim of Discrimination on the Basis of Disability**

In order to state a claim for discrimination under the ADA, Thomas must sufficiently allege (1) that she is a qualified individual with a disability, and (2) that she suffered an adverse employment action as a result of discrimination. *See Cassidy*, 319 F. Supp. 3d at 480 (quoting *Taylor*, 184 F.3d at 306). Here, the parties do not appear to dispute that Thomas was an individual with a disability within the meaning of the ADA. *See* Mot. 20. Rather, Defendants argue that any adverse employment action Thomas endured was not the result of disability-based discrimination. *See id.* at 20-21. Notwithstanding, Thomas has sufficiently pleaded a claim for disability-based discrimination in her Amended Complaint.

In particular, Thomas' allegations are sufficient to raise an inference of discrimination at this stage. Foremost, Thomas alleges that she advised Defendants of her disabilities in or about October of 2020, which included both anxiety and depression. *See* Am. Compl. ¶ 23. Thomas alleges that she was treated well and received good performance reviews up to and until the time she disclosed her medical conditions. *See id.* ¶¶ 36-37, 40. After disclosing her conditions, Thomas alleges that this treatment changed. *See id.* ¶ 37. On the day she returned from leave for

her medical conditions, Thomas was removed from the schedule and suspended, pending the results of multiple tests. *See id.* ¶¶ 30, 32. One of those tests included a psychiatric evaluation. *See id.* ¶¶ 33-34. In addition, Thomas alleges that Rose, her supervisor, made multiple comments about her conditions, including "I don't care about your health right now, I care about your attendance; you need to be here." *See id.* ¶ 42.

Defendants suspension and removal of Thomas from the schedule pending the results of a psychiatric evaluation came within days of her disclosure of her anxiety and depression to Defendants. Accordingly, while the timing itself is suggestive of discrimination, the inference is strengthened by the close relation between Thomas' claimed disabilities and Defendants' requirements for her reinstatement as well as Rose's comments. Accordingly, in light of the review afforded a plaintiff's allegations at this stage of the proceedings, Thomas has sufficiently alleged a claim of ADA discrimination.

### 2. Claim of Retaliation under the ADA

Thomas next claims that she was retaliated against for engaging in protected activity in violation of the ADA. In order to state a claim for retaliation under the ADA, Thomas must allege (1) engagement in protected activity, (2) an adverse employment action, and (3) a causal connection between the protected activity and adverse action. *Connearney*, 2016 WL 6440371, at *10 (citing *Krouse*, 126 F.3d at 500).

Beginning with the first element, a request for reasonable accommodation qualifies as engagement in protected activity. *Sowell*, 139 F. Supp. 3d at 702 (citing *Shellenberger*, 318 F.3d at 191). However, requests for FMLA leave are not *per se* requests for accommodation. *See Beishl*, 2018 WL 6812132, at *4 (citing *Isley*, 275 F. Supp. 3d at 631). Rather, a request for FMLA leave *may* be considered a request for a reasonable accommodation only where the

employer knows, or has reason to know, that the request is not based on a one-time event. *See id.*

In its prior Opinion, this Court determined that Thomas had not sufficiently alleged that her request for FMLA leave constituted a request for a reasonable accommodation under the ADA. *See* Op. 12/14/21 at 11. Notwithstanding, Thomas' allegations in her Amended Complaint remedy this deficiency. Thomas' Amended Complaint includes allegations sufficient to place her employer on notice that her request for leave was more than a one-time event. Specifically, Thomas alleges that she informed both her supervisor and Human Resources that "she would need intermittent time off from work to obtain treatment for her medical conditions." *See* Am. Compl. ¶¶ 26-27. She also alleges that she applied for and was approved for periodic time off between October of 2020 and February of 2021. *See id.* ¶ 28. These allegations, taken as true, are sufficient to place Defendants on notice that Thomas' need for FMLA leave was based on more than a one-time event. Accordingly, Thomas' requests for FMLA leave qualify as requests for reasonable accommodations, and in turn, those requests constitute protected activity sufficient to sustain an ADA retaliation claim.

Thomas also sufficiently alleges that she suffered an adverse employment action. In particular, actions including Thomas' suspension, her removal from the schedule, and her eventual termination all constitute adverse employment actions sufficient to sustain a retaliation claim. *See Shann*, 2017 WL 5260780, at *21 (citing *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014)).

Finally, Thomas sufficiently alleges a causal link between her engagement in protected activity and her eventual retaliation. For example, Thomas alleges that she was removed from the schedule and suspended the very day she returned from the FMLA leave she requested. *See*

Am. Compl. ¶ 30.  As this Court noted in its prior Opinion, this immediate temporal proximity is unusually suggestive of a retaliatory motive.  *See* Op. 12/14/21 at 15-16.  Accordingly, Thomas has sufficiently pleaded a claim for ADA retaliation.

### 3.   Claim of Hostile Work Environment under the ADA

Thomas next claims that she was subjected to a hostile work environment in violation of the ADA.  In order to set forth a claim of this type, Thomas must allege (1) she suffered intentional discrimination because of her disability, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected her, (4) the discrimination would have a detrimental effect on a reasonable person in similar circumstances, and (5) *respondeat superior* liability.  *See Mandel*, 706 F.3d at 167 (citing *Jensen*, 435 F.3d at 449).  In its prior Opinion, this Court found that Thomas had failed to sufficiently plead a claim of hostile work environment.  However, based on the new allegations in Thomas' Amended Complaint, she has pleaded a claim for hostile work environment.

First, as this Court noted above, Thomas has pleaded that she suffered intentional discrimination on the basis of her alleged disability.  Second, Thomas has alleged a pervasive series of conduct that spanned from October 2020 to February 2021 that detrimentally affected her.  In particular, Thomas alleges that she was required to undergo multiple unwarranted drug tests, *see* Am. Compl. ¶¶ 30, 33, suspended from work, *see id.* ¶ 32, and eventually terminated because of her disability, *see id.* ¶ 52.  Throughout this period, Thomas also alleges several comments made by Rose, Thomas' supervisor, that relate to her claimed disability.  *See id.* ¶¶ 38-40 (alleging Rose followed Thomas around the workplace, continually asking if Thomas was "ok"; further alleging Rose did not engage in this conduct with other employees); *see id.* ¶ 41 (alleging Rose made derogatory comments regarding Thomas' medical conditions, including

"what's your problem now"); *see id.* ¶ 42 (alleging Rose stated to Thomas "I don't care about your health right now, I care about your attendance; you need to be here"); *see id.* ¶ 43 (alleging Rose ripped up and threw away a medical note Thomas provided regarding an absence); *see id.* ¶ 48 (alleging Rose accused Thomas of drug use and stated that nurses are trained to know when someone is "on drugs").  Accordingly, when viewed in totality, this conduct goes beyond "offhand comments" or "isolated events," and instead, it forms the basis for a hostile work environment claim.  Moreover, this Court is satisfied that a reasonable employee would be detrimentally affected by the sort of pervasive conduct alleged.  Finally, because Thomas alleges that this conduct was undertaken by her supervisor and because she alleges that the hostile actions were accompanied by tangible employment actions, the Defendants could be held vicariously liable, and the fifth element is satisfied.  *See Bumbarger v. New Enterprise Stone & Lime Co.*, 170 F. Supp. 3d 801, 837-38 (W.D. Pa. 2016) (citing *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013)).

Accordingly, Thomas has sufficiently alleged a hostile work environment claim, and Defendants motion to dismiss this claim is denied.

    **B.**    **Thomas' FMLA Claims**

        **1.**    **Claim of Interference with FMLA Leave**

In order to state a claim for FMLA interference, Thomas must allege (1) her eligibility under the FMLA, (2) that Defendants are covered by the FMLA, (3) that Thomas was entitled to leave, (4) that Thomas notified Defendants of her intent to take leave, and (5) a denial of benefits to which Thomas was entitled under the FMLA.  *Ross*, 755 F.3d at 191-92 (citing *Johnson*, 566 F. Supp. 2d at 446).  When a plaintiff claims that she was discouraged from taking leave, that

plaintiff must show that the discouragement occurred in tandem with some actual harm. *See Shann*, 2017 WL 5260780, at *19 (citing *Fraternal Order of Police, Lodge 1*, 842 F.3d at 246).

As this Court noted in its prior Opinion, Thomas had failed to state a viable claim for FMLA interference under a discouragement theory. *See* Op. 12/14/21 at 14-15. Thomas had failed to allege that any discouragement took place in tandem with some actual harm. *See id.* Here, as regards Thomas' Amended Complaint, her FMLA interference claims suffer from the same defect.

In her Amended Complaint, Thomas now alleges that she took periods intermittent of leave beyond that taken between October 3, 2020 and October 13, 2020. *See* Am. Compl. ¶¶ 27-28. Specifically, Thomas now alleges that she applied and was approved for intermittent FMLA leave between October 14, 2020 and February 21, 2021.[3] *See id.* Despite these new allegations, Thomas has failed to allege that Defendants' actions discouraged her from taking any prospective period of leave. *See Shann*, 2017 WL 5260780, at *19 (citing *Fraternal Order of Police, Lodge 1*, 842 F.3d at 246). Quite the contrary, these allegations show (1) that Thomas continued to apply for leave up and until the time of her termination, and (2) that the Defendants continued to approve her requests for leave up and until that time. Accordingly, Thomas has failed to show that she was denied a benefit owed her under the FMLA or that she was discouraged from taking some period of future leave as a result of Defendants actions. Thus, Thomas' claim for FMLA interference is dismissed.

---

[3] Although February 21, 2021 is beyond the date on which Thomas alleges that she was terminated, this Court provides her the benefit of the doubt.

### 2. Claim of Retaliation for Use of FMLA Leave

In order to state a claim for retaliation under the FMLA, Thomas must allege (1) that she invoked her right to FMLA leave, (2) that she suffered an adverse employment decision, and (3) a causal link between the two. *See Lichtenstein*, 691 F.3d at 301-02 (citing *Erdman*, 582 F.3d at 508). As this Court noted in its prior Opinion, Thomas alleged enough to state a claim for FMLA retaliation. Defendants again move to dismiss this claim. Notwithstanding, Thomas has alleged enough in the Amended Complaint to state a claim for FMLA retaliation.

Consistent with her Original Complaint, Thomas alleges that she invoked her right to FMLA leave. *See* Am. Compl. ¶¶ 25, 27-28. In addition, Thomas alleges that she suffered at least one adverse employment action. *See id.* ¶¶ 32-33. Finally, Thomas alleges the requisite causation to sustain a retaliation claim. In this instance, Thomas alleges that she suffered an adverse employment action on the very same day that she returned from her ten-day FMLA leave period. *See id.* ¶ 30. This type of immediate proximity is the sort that is unusually suggestive of retaliatory causation. Accordingly, Thomas has sufficiently alleged a claim for FMLA retaliation.

### V. CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. Thomas' claims for ADA discrimination, ADA retaliation, hostile work environment, and FMLA retaliation may proceed as pleaded. Thomas' claim for FMLA interference is dismissed. The dismissal of Thomas' FMLA interference claim is with prejudice. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Following this Court's Opinion on Defendants'

motion to dismiss Thomas' Original Complaint, Thomas was provided an opportunity to amend any and all dismissed claims. Despite that opportunity to amend, Thomas' new allegations do not cure the preexisting factual deficiencies of her FMLA interference claim. In light of Thomas' prior opportunity to amend, it would be inequitable to Defendants to allow Thomas further leave to amend her FMLA interference claim. Accordingly, the dismissal of Thomas' FMLA interference claim is one with prejudice.

 A separate Order follows.

                BY THE COURT:

                */s/ Joseph F. Leeson, Jr.*
                JOSEPH F. LEESON, JR.
                United States District Judge